# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re | Case No. 05-80042-DHW |
| | Chapter 11 |
| QUANTEGY, INC., *et al.*,[1] | (Jointly Administered) |
| Debtors. | |

## MEMORANDUM OPINION

Before the court is the motion by the debtors to assume three license agreements with Sony Corporation, Inc. (hereinafter, "Sony"), and thereafter, to assign their rights under those agreements to a third party (Doc. #234).

Sony filed an objection to the debtors' motion to assume and assign the license agreements (Doc. #256). In its objection Sony contends that the debtors' assumption of these licenses is precluded by 11 U.S.C. §365(c)(1).[2] Hearings to consider this issue were held on March 18, 2005 and on March 22, 2005.

## JURISDICTION

The court's jurisdiction in this matter stems from 28 U.S.C. § 1334. Further, because this matter involves a core proceeding under 28 U.S.C. §157, the court's jurisdiction extends to the entry of a final order or

---

[1] The debtors are the following: Quantegy Inc., QM Inc., Quantegy International Inc., Quantegy Acquisition Corp., Quantegy Holdings Inc., GoProAudio.com, Inc., GoProDirect.com, Inc. and Quantegy Media Corp.

[2] Sony further contends that even if §365(c)(1) does not preclude assumption, assumption should nevertheless not be permitted because Sony has not been afforded adequate assurance of future performance as required by 11 U.S.C. §365(b)(1)(C). A hearing on the 365(b)(1)(C) issue will be held on March 24, in conjunction with the hearing to approve the auction sale. Hence, the sole issue considered here is whether the debtors are precluded from assuming these license agreements by §365(c).

judgment.

## FACTUAL FINDINGS

The relevant facts are undisputed. The debtors entered into three license agreements with Sony involving the use of the Sony trademark and the use of certain Sony manufacturing process patents. Although the debtors were in default with respect to payment of license fees due under the agreements, the license agreements were in effect when the debtors filed for chapter 11 relief on January 10, 2005.

Each of the license agreements contain restrictions on assignment of rights thereunder by the debtors. One agreement, referred to by the parties as the Betacam agreement, provides:

> <u>Section 3</u>. This Agreement may not be assigned by either party without the prior written consent of the other party, except that such prior written consent shall not be required in the event of any assignment to either party's sister division, parent, wholly owned subsidiary corporation, <u>acquiring corporation or by transfer of the entire portion of either party's business relating to "BETACAM" and 'BETACAM SP"</u>.......

Betacam License Agreement, Art. XI, Sec. 3, pa. 17. (Emphasis added).

The second license agreement, referred to by the parties as Digital Betacam agreement, provides:

> <u>Section 3</u>. The licenses granted under Article II and Article IX of this Agreement shall be non-assignable and non-transferrable by a party hereto unless approved by the other in writing. Should any third party, other than a SUBSIDIARY of LICENSEE, obtain direct or indirect control of the professional video tape business of LICENSEE, then, at any time thereafter during the term of this Agreement, LICENSOR may, at its option, and upon giving sixty (60) days prior notice

> in writing, terminate this Agreement. "Control", as used herein, means (I) the ownership or control, directly or indirectly, of greater than fifty percent (50%) of the voting power or other beneficial interest in voting stock of LICENSEE or (ii) merger or consolidation of LICENSEE, or <u>the purchase of assets of the professional video tape business of LICENSEE. LICENSOR will offer a license to such third party similar to the license granted hereunder under reasonable terms and conditions.</u>

Digital Betacam Agreement, Art. XI, Sec. 3, pa. 10. (Emphasis added).

The third license agreement, referred to by the parties as the U-Matic agreement, provides:

> <u>Section 1</u>. Neither this Agreement nor any of its benefits nor any rights hereunder shall be directly or indirectly assigned, transferred, divided or shared by the LICENSEE to or with any individual, firm, corporation, or association, whatsoever, without prior written consent of the LICENSOR, except to successor, by merger or consolidation of, or <u>to purchasers of, the entire business relating to the subject matter of this license and associated goodwill of the LICENSEE</u>, and except as provided in Section 2 of this Article.

U-Matic License Agreement, Art. IX, Sec. 1, pa. 6. (Emphasis added).

## CONCLUSIONS OF LAW

11 U.S.C. § 365 sets forth a broad policy favoring assumption and assignment of unexpired leases and executory contracts.[3] *In re Sunterra Corporation*, 361 F.3d 257, 266 (4th Cir. 2004); *In re Midway Airlines, Inc.*,

---

[3] The court concludes that these licenses constitute executory contracts embraced by 11 U.S.C. § 365 because substantial duties remain to be performed by both sides to the agreements.

6 F.3d 492, (7th Cir. 1993). With limited exceptions, section 365(a) allows a trustee to assume or reject <u>any</u> executory contract or unexpired lease of the debtor. Section 365(f)(1) permits a trustee to assign contract rights to third parties even in the face of contract provisions or applicable law prohibiting or restricting assignment. Generally, both sections operate irrespective of the objection of the other party to the contract.[4]

11 U.S.C. § 365(c)(1) creates a narrow exception to the broad rule. Section 365(c)(1) prevents a trustee from assuming or assigning a contract or lease where <u>both</u> of the following conditions are present:

> (A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; <u>and</u>
> (B) such party does not consent to such assumption or assignment.

If both of the above conditions are present, the trustee may neither assume nor assign the contract or lease.

At first glance, sections 365(c)(1) and (f)(1) may appear to be at odds because section 365(f)(1) allows assignment irrespective of "applicable law" while 365(c)(1) restricts both assumption and assignment based on "applicable law." In other words, section 365(f)(1) "giveth" and section 365(c)(1) "taketh away."

However, as noted above, the court construes 365(c)(1) as a narrow exception to 365(f). Section 365(f) allows assignment despite applicable

---

[4] "This rather extensive power reflects the important consideration that the trustee should be able to abandon contracts that impose burdensome liabilities upon the bankruptcy estate, but should also be allowed to retain favorable contracts that benefit the estate. . . Section 365 thus advances one of the Code's central purposes, the maximization of the value of the bankruptcy estate for the benefit of creditors." *Midway*, 6 F.3d at 494.

law prohibiting assignment. Section 365(c)(1) limits that right only where the applicable law actually excuses performance or acceptance of performance to or from a third party.[5] Clauses against assignment are not favored in the law, and each of these sections reflects that sentiment.

Sony first contends that applicable law relieves Sony from any contractual legal obligation to a third-party assignee. In support, Sony contends that patent licenses are personal and not assignable under federal patent law. *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999). The debtor disagrees.

The debtor states that the instant licences are not personal and therefore assignable because "the identity of the contracting party is not material to the agreement." *See Catapult*, 165 F.3d at 752; *Midway*, 6 F.3d at495. The debtor states that parties other than the debtor have the capability of manufacturing according to Sony's patent specifications.

However, the court need not decide the issue. Even if Sony is correct, "applicable law" operates only in the absence of Sony's consent. Applicable law does not excuse Sony's performance under a contract in which Sony expressly consents to be bound to a third-party assignee.

The trademark and patent agreements at issue in this case authorize assignment under limited circumstances. To the extent that the debtor seeks to assign the agreements consistent with those clauses, Sony is not excused by "applicable law" from its self-imposed contractual obligations.

Sony next contends that, apart from the provisions of the license agreements, it does not consent either to assumption or assignment of the agreements. *See* 11 U.S.C. § 365(c)(1)(B). However, Sony's post-bankruptcy consent is irrelevant if applicable law does not excuse Sony from performance. As stated above, the debtor is prohibited from assuming and assigning the agreements only if both provisions of section

---

[5] "[T]he 'applicable law' to which subsection (c) refers must mean 'applicable law' other than general prohibitions barring assignment." *In re James Cable Partners, L.P.*, 27 F.3d 534 (11th Cir. 1994).

365(c)(1) are met. Subsection (A) has not been met; therefore subsection (B) is a moot point.

Sony relies on a Fourth Circuit case which holds to the contrary. *See In re Sunterra Corporation*, 361 F.3d 257 (4th Cir. 2004). *SunTerra* is similar to the facts in the instant case in that the contract at issue authorized assignment to a third party under enumerated circumstances. Citing a Seventh Circuit case, *Midway Airlines*, the Fourth Circuit held that the contractual consent was not only relevant but possibly "determinative" of the action. *SunTerra*, 361 F.3d at 271 (citing *In re Midway Airlines, Inc.*, 6 F.3d 492 (7th Cir. 1993)). However, *SunTerra* distinguished *Midway* by stating that the contract in *Midway* expressly authorized assignment in the event of bankruptcy. *See Sunterra*, 361 F.3d at 271, n.16. *SunTerra* then held that because the licensor did not consent to *assumption* of the contract, the trustee was precluded from assumption.[6]

This court agrees that assumption and assignment are different events in a bankruptcy case. However, section 365 allows assumption over the objection of the other party to the contract if applicable law does not excuse that party's performance. Therefore, this court respectfully declines to follow *SunTerra.*

This decision is consistent with concepts underlying freedom of contract. Trademark and patent law allows a licensor to expressly authorize the use of its name and intellectual property. Having done so, the licensor cannot be heard to complain that the same applicable law excuses him from the consequences of his own contract.

CONCLUSION

For the foregoing reasons, the court concludes that Sony's objection is due to be overruled. A separate order will enter pursuant to Fed. R. Bankr. Proc. 9021.

---

[6] Though the contract provision in *Midway* expressly contemplated assignment in the context of bankruptcy, the rationale of *Midway* has a broader foundation. *See Midway*, 6 F.3d at 496, n.6.

Done this 23rd day of March, 2005.

          /s/ Dwight H. Williams, Jr.
          United States Bankruptcy Judge

c: Cameron A. Metcalf, Attorney for Debtors
 Glenn D. Moses, Attorney for Sony